## State of Vermont v. William Page and In re William Page

[757 A.2d 1038]

Nos. 98-558 & 99-013

Present: **Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.**

Opinion Filed May 26, 2000

Motion for Reargument in No. 98-558 Denied July 19, 2000

*Diane C. Wheeler*, Franklin County Deputy State's Attorney, St. Albans, for Plaintiff/Respondent-Appellee.

*Robert Appel*, Defender General, and *William A. Nelson*, Appellate Attorney, Montpelier, for Defendant/Petitioner-Appellant.

**Dooley, J.** Defendant William Page appeals from the district court's order revoking his probation and resentencing him to a term of six-to-fifteen years imprisonment, all suspended but fourteen years, and also appeals the denial of his petition for a writ of habeas corpus. Defendant argues that: (1) the district court lacked jurisdiction to order adult probation or imprisonment because retransfer of the criminal charge from family court to district court was not authorized by the transfer statute; (2) he was not subject to the terms and conditions of his probation while in custody, before commencement of his probationary term; and (3) the delay in the issuance of findings denied him due process of law. We affirm.

On May 25, 1993, defendant, then almost sixteen years of age, was charged with sexual assault, aggravated assault, and kidnaping. On October 29, 1993, on defendant's motion, the judge transferred the sexual assault and kidnaping charges to family court. The charge of aggravated assault remained pending in district court. On December 22, 1993, the parties agreed to and signed a complex plea agreement detailing how the pending charges were to be resolved in family and district court.

The agreement provided for the kidnaping case to remain in family court, the aggravated assault case to be transferred to family court, and the sexual assault case to be retransferred to district court. Defendant admitted the aggravated assault and kidnaping charges in family court and was placed in the custody of the State on juvenile probation. Defendant pled guilty to the sexual assault charge in district court and was sentenced to "not less than six (6) nor more than fifteen (15) years in the custody of the Commissioner of Corrections, all suspended except six (6) years to serve," and probation. Defendant commenced service of his sentence on the day the parties entered into the agreement. The probation order, which defendant signed, agreeing to its terms, contained Special Condition 15: "Defendant to complete sex offender treatment, to include residential treatment if necessary, to the satisfaction of the probation officer."

On June 6, 1994, defendant was admitted to the Whitney Academy, a residential treatment program for adolescent male sex offenders who are intellectually challenged, in East Freetown, Massachusetts. In the years between defendant's admission to Whitney and his discharge on April 1, 1997, he made minimal progress. Throughout that time, he collected photographs of children and secreted other residents' coats to use for sexual arousal and gratification. He deceived treatment professionals and other members of his sex offender group, and engaged in self-injury. He lacked sincere empathy for his victims. When presented with the threat of being returned to prison in Vermont, defendant's level of cooperation would improve. However, his defiance and lack of compliance with the treatment persisted. The Director of Clinical Services and other staff members concluded that defendant presented a significant risk to re-offend. As a result, defendant was discharged from Whitney Academy with a recommendation that he receive further sexual offender treatment. Defendant was returned to Vermont and incarcerated at Northwest State Correctional Center.

On June 5, 1997, defendant's probation officer filed a probation-violation complaint in district court, alleging that defendant had violated Condition 15 of his probation terms by not completing sex-offender treatment to the satisfaction of the probation officer. A merits hearing was held on October 1 and 2, and November 6, 1997. On November 6, 1998, defendant filed a habeas corpus petition alleging that the court's failure to issue a timely decision on the violation of probation charge denied him due process of law.[*] On November 11, 1998, the court issued a decision finding defendant in violation of Condition 15 of his probation order. The superior court denied the habeas corpus petition as moot. The district court denied a motion to dismiss because the decision was untimely. The district court revoked probation and resentenced defendant to six-to-fifteen years in prison, all suspended except fourteen years and probation.

Defendant first argues that because the "retransfer" of the sexual assault charge from family court to district court was not authorized by the transfer statute, the district court lacked jurisdiction to order adult probation or imprisonment. Pursuant to 33 V.S.A. § 5506(a), transfers from family to adult court are allowed "if the child had attained the age of 10 but not the age of 14 at the time the act was alleged to have occurred." Defendant was fifteen years old at the time the act was alleged to have occurred.

Defendant relies upon *State v. Charbonneau*, 154 Vt. 373, 376, 576 A.2d 1253, 1255 (1990), in which this Court reversed a district court conviction of a juvenile for simple assault because the case was retransferred to district court from family court without statutory authority. There are three distinctions between *Charbonneau* and this case: (1) defendant did not agree to the transfer in *Charbonneau*; here it was part of a plea agreement; (2) defendant was tried for the offense in the district court; here, he pled guilty; and (3) the offense in *Charbonneau*, simple assault, is not one which is authorized for transfer to district court prior to adjudication, see 33 V.S.A. § 5506(a); sexual assault is such an offense, see *id*. We believe the first distinction is critical.

 The central premise of defendant's argument is that a violation of the transfer statute deprives the transferee court of jurisdiction, and, as a result, defendant can now void the transfer despite the fact

---

[*] Defendant was held in prison following the completion of his six-year sentence in August 1997, because he was unable to post the $25,000 bail imposed during the pendency of the probation-violation proceedings.

that he agreed to it, benefitted from it and pled guilty to the offense. We disagree that the transferee court lacks jurisdiction. The district court has jurisdiction over a criminal charge that a fifteen-year-old committed sexual assault. See 4 V.S.A. § 439 (district court has jurisdiction over felonies); 13 V.S.A. § 3252(a) (sexual assault is a felony punishable by up to twenty years imprisonment); 33 V.S.A. § 5502(a)(1)(B) (for offenses listed in § 5506(a), juvenile over fourteen years of age "shall be subject to criminal proceedings as in cases commenced against adults"); § 5506(a)(10) (listing sexual assault); *State v. Buelow*, 155 Vt. 537, 540, 587 A.2d 948, 950 (1990) (criminal court has exclusive original jurisdiction over cases involving persons between fourteen and sixteen who are charged with certain serious crimes). An improper transfer to district court may be an error if properly raised and preserved, but we do not believe it deprives the district court of jurisdiction. Thus, "a plea of guilty operates as a waiver of previous procedural shortcomings, insofar as such defects are subject to waiver." *State v. Armstrong*, 148 Vt. 344, 345-46, 533 A.2d 1183, 1184 (1987) (citation omitted). The unauthorized transfer in this case was a procedural shortcoming that was waived by the guilty plea.

Defendant next argues that he was not subject to the conditions of his probation while in custody, before beginning his probationary term. Thus, he argues, Condition 15 did not apply to him until he served his minimum sentence and was released on probation, and specifically did not apply to him when he was at Whitney Academy. In order to get around *State v. St. Francis*, 160 Vt. 352, 628 A.2d 556 (1993), defendant argues we should reach this result as the proper construction of the probation agreement.

The court below held that this case is governed by *St. Francis*, in which the defendant was furloughed just before probation and, while on furlough, violated probation. This Court held that "probation may be revoked for acts committed by a defendant after imposition of the sentence but before commencement of the probationary term." *Id.* at 354, 628 A.2d at 557. We based our decision on the wording of Vermont's probation statutes, the holdings from other state and federal courts and the logic of the State's position. In considering the State's position, we held:

> A court's decision to suspend all or part of a sentence is conditioned on the assumption that the defendant will refrain from certain behavior. Thus, from the time the conditions are imposed at sentencing, the defendant is on

notice to conform his conduct to those conditions, and at any time thereafter the court may impose the underlying sentence based on the defendant's failure to do so.

*Id.* at 354, 628 A.2d at 557-58.

Defendant tries to distinguish *St. Francis* by arguing that the record does not support the interpretation that all prerelease behavior is covered by the probation conditions, and by further arguing that the parties and the court intended Condition 15 to apply only *after* defendant's release from the unsuspended part of his sentence. Under defendant's theory, failure in his prerelease therapy could result only in adverse prison classification and parole board action, not probation revocation.

Although we agree that we must construe the probation agreement according to contract principles, see *State v. Duffy*, 151 Vt. 473, 477, 562 A.2d 1036, 1038 (1989), defendant reads *St. Francis* too narrowly. The point of *St. Francis* is that probation, as created by the Vermont statutory scheme, empowers the State to impose and enforce conditions on a defendant's behavior that apply from the time the probation agreement is signed. Although we do not have to decide whether the State can bargain away its power, we do not see why it would ever do so. It would make no sense, for example, for the State to say that Condition 15 no longer applies after the first two years of probation following completion of the unsuspended part of the sentence although probation continued thereafter. Nor would it make sense for the State to bargain away its right to revoke probation for a violation of Condition 15 after a certain date. We think it makes no more sense for the State to bargain away its power with respect to the time following sentencing until defendant is released from incarceration. Probation as established by Vermont law includes this period as well as any other covered by the sentence. To the extent we may view this as a contract construction question, we hold that a probation agreement assumes that the State retains the full extent of probation powers given by statute, including a term that commences with the signing of the agreement. We leave to another day whether an explicit waiver of part of those powers would be valid.

■ There is no explicit waiver here. The probation order, signed on the date of defendant's sentencing, provides that "defendant is placed on probation in the care and custody of the Commissioner of Corrections until further order of the Court under the following conditions . . . ." Nothing in the language suggests that the proba-

tion was not to commence immediately. Indeed, defendant's argument is that only Condition 15 was deferred, to apply only after the end of the unsuspended term. Nothing in its language, however, differentiates it from other conditions based on the date of its applicability. Defendant argues that the specific included circumstance, "to include residential treatment if necessary," applies only when defendant is released and shows the whole condition applies only after he serves the unsuspended sentence. Even if we accept that the specific circumstance would apply only after defendant is released, we do not agree that we can read the whole condition as so limited. We hold that defendant was properly charged with a violation of Condition 15 even though he was serving the unsuspended term of incarceration.

Defendant finally argues that the court's one-year delay between the conclusion of the probation-violation merits hearing and the issuance of a decision denied him due process of law. Defendant first contends that in assessing the impact of delays in probation revocation cases we should apply the "speedy trial" test laid out in *Barker v. Wingo*, 407 U.S. 514 (1972). He then contends that under the four factors laid out in *Barker* — the length of the delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant, see *id.* at 530-32 — the delay in this case violated his due process rights.

Defendant poses the choice of a standard as between the more favorable standard of *Barker*, as interpreted in *United States v. Companion*, 545 F.2d 308, 311 (2d Cir. 1976), and a more rigid standard in *State v. Ellis*, 149 Vt. 264, 267-68, 542 A.2d 279, 282 (1988). Defendant distinguishes *Ellis* because it involved the delay between the issuance of a probation violation arrest warrant for a probationer found in another state and the probationer's transport to Vermont to face violation proceedings.

We doubt that the choice of a relevant standard will affect the outcome in this case. As we said in a comparable due process challenge to the failure of the court to render a timely decision on a sentence reconsideration motion, "[t]he major element of due process delay is 'substantial prejudice' caused by the delay." *State v. Dean*, 148 Vt. 510, 514, 536 A.2d 909, 912 (1987) (quoting *State v. Hall*, 145 Vt. 299, 307, 487 A.2d 166, 171 (1984)); see also *In re O'Dea*, 159 Vt. 590, 597-98, 622 A.2d 507, 512 (1993) (same). Similarly, in assessing speedy trial claims under the *Barker* standard, we have emphasized that prejudice is the most important factor and have held "[w]here there is no prejudice to the defense at trial, a speedy-trial claim

cannot prevail." *State v. Turgeon*, 165 Vt. 28, 35, 676 A.2d 339, 343 (1996).

 Because the claim involves decisional delay, by definition there was no prejudice to defendant's ability to present his case. Moreover, defendant's probation was revoked, and a longer sentence of incarceration was imposed; thus a more timely decision would not have resulted in earlier release from custody. Although defendant complains that he was denied sex offender treatment while remaining in limbo without a decision, he will have an adequate opportunity to receive such treatment during the remainder of his sentence. We cannot find sufficient prejudice to conclude that defendant was denied due process of law.

Because we affirm the court's decision to revoke defendant's probation, we agree that the superior court was correct in denying the writ of habeas corpus. Defendant was properly held under the revocation decision; the habeas corpus petition was therefore moot.

*Affirmed.*