929 A.2d 1276 (2007)
2007 VT 52
STATE of Vermont
v.
Mark BENJAMIN.
No. 2005-181.
Supreme Court of Vermont.
June 22, 2007.
*1278 Howard E. Van Benthuysen, J.
Christopher C. Moll, Lamoille County Deputy State's Attorney, Hyde Park, for Plaintiff-Appellee.
Allison N. Fulcher of Martin & Associates, Barre, for Defendant-Appellant.
Present: REIBER, C.J., DOOLEY, JOHNSON, SKOGLUND and BURGESS, JJ.
REIBER, C.J.
¶ 1. Defendant Mark Benjamin appeals from the district court's finding that he was in violation of probation (VOP). Defendant asserts that the VOP complaint should have been dismissed because he was denied his right to a hearing within a reasonable time. The State contends, in opposition, that any delay in the hearing was due largely to defendant's own actions and that no prejudice resulted from the delay. We affirm.
¶ 2. The pertinent facts are uncontested. Defendant pled guilty on July 13, 2004, to one count of lewd and lascivious conduct with a minor, and one count of sexual assault on a minor.[1] He was sentenced, on the first charge, to one to five years, all suspended but sixty days. On the second, he was sentenced to three to twelve years, all suspended but sixty days on a pre-approved furlough work crew. The two sentences were concurrent, and defendant was placed on probation with standard conditions. On August 20, 2004, defendant's probation officer filed a VOP complaint alleging that defendant had violated his probation conditions by using regulated drugs and alcohol. On the same day, defendant was arraigned on six new charges: one count of sexual assault on a minor under sixteen, 13 V.S.A. § 3252(a)(3); three counts of delivering regulated drugs to minors, 18 V.S.A. § 4237(a); and two counts of furnishing alcohol to a minor, 7 V.S.A. § 658. Defendant entered a plea of not guilty, and bail was set at $50,000. A preliminary probable-cause hearing on the VOP charge was also held on August 20, and probable cause was found for the VOP. Unable to make bail on the six new charges, defendant was taken into custody the same day.
¶ 3. Defendant was assigned counsel on August 24, 2004, and a merits hearing on the VOP complaint was scheduled for September 20, 2004. The court also set September 20 as the date for a status conference on the criminal charges. Defendant's counsel withdrew on August 31, and new counsel was assigned that day. Defendant *1279 then moved, on September 17, 2004, to continue the September 20 hearing. The motion was granted, and the hearing was set for October 18, 2004. On October 13, 2004, defendant filed a motion to suppress certain statements he had made to police officers, with respect to both the VOP and the other charges.
¶ 4. The first hearing on the VOP complaint was held on October 18, 2004. The State called defendant's probation officer to testify, and the time allotted for the hearing was sufficient for the State to conclude its direct examination but insufficient for defendant to complete cross-examination. Also on that day, five new charges were filed arising from defendant's conduct on August 20. Bail on those charges was set at $25,000, and defendant, already incarcerated for failure to make bail on the August 20 charges, did not meet the additional bail. The October 18 hearing was continued to November 22, 2004, to take further evidence.
¶ 5. At the November 22 hearing, which lasted less than an hour, defendant moved to merge consideration of the motion to suppress with the VOP hearing. That motion was granted. Defendant then completed the cross-examination of the probation officer begun at the October 18 hearing, after which the State conducted direct examination of one of the police officers who executed the search warrant on defendant's home. The time allotted for the hearing did not suffice for the State to complete direct examination. At the close of the hearing, counsel for defendant asked the court if it would reschedule the upcoming hearing on the suppression motion to coincide with the next hearing on the VOP. The court agreed, and a hearing was scheduled for November 29.
¶ 6. At the November 29 hearing, which lasted about forty minutes, defendant asserted that the scheduling had created problems with out-of-state witnessesin particular defendant's mother, who feared losing her job if she had to miss work for other hearingsand was diminishing his ability to cross-examine witnesses effectively. Citing these difficulties, defendant moved to dismiss the VOP complaint. The motion was denied. After the denial, the State concluded direct examination of the police officer, and defendant began to cross-examine her. During both the State's and defendant's examination of the officer, counsel for both parties discussed with the court the difficulties inherent in examining the officer without a resolution of the motion to suppress. At the close of the November 29 hearing, the court noted that, when it came time to focus more closely on the statements subject to the motion to suppress, the officer would be called upon to testify again.
¶ 7. Additional hearings were held, including a half-day on March 23 and a shorter hearing on March 29, 2005. On March 23, four witnesses testified. The first was a minor who was present when defendant furnished drugs to other minors and who assisted police in recording a telephone call in which she discussed drugs with defendant. The defense had a full opportunity to cross-examine her and did so. The second witness was a friend of defendant. He testified and was subject to cross-examination, redirect, and recross. Third to testify on March 23 was the police officer who had previously testified on November 29. Finally, the court took testimony from another officer who was present at the time the warrant was executed. That officer was subject to direct and cross-examination. Four more witnesses, including defendant, testified at the shorter March 29 hearing.
¶ 8. The district court then issued an order on April 21, 2005, finding that defendant had violated his probation conditions. *1280 Probation was revoked on June 6, 2005, and the underlying sentences on the sexual-assault and lewd-and-lascivious-conduct charges were imposed, with credit for time served, after a sentencing hearing. Defendant appealed.
¶ 9. We first review the rules and statutes governing VOP hearings in Vermont. Rule 32.1 of the Vermont Rules of Criminal Procedure and §§ 301-305 of Title 28 govern the modification and revocation of probation. Under Rule 32.1, two hearings must be held. First, a probationer is entitled to a "prompt" preliminary hearing to determine whether there is probable cause to detain him or her pending a merits hearing. V.R.Cr.P. 32.1(a)(1). Second, the merits hearing, referred to in the statute as the "revocation hearing," must be held "within a reasonable time." V.R.Cr.P. 32.1(a)(2). The Vermont rules mirror the Federal Rules of Criminal Procedure in both respects. See F.R.Cr.P. 32.1(b)(1), (2) (preliminary hearing must be held "promptly"; revocation hearing must be held within "a reasonable time"). Both the Vermont and federal rules dictate certain procedural requirements for the preliminary and final hearings, but those requirements are not implicated in the instant case; defendant contests only the timing of his revocation hearing. The United States Supreme Court has held that the timing and nature of both hearings is mandated by the Sixth Amendment to the United States Constitution.[2] Vermont's rule was promulgated to comply with the constitutional mandates announced in those cases. Reporter's Notes, V.R.Cr.P. 32.1.
¶ 10. First, in Morrissey v. Brewer, 408 U.S. 471, 485, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), a parole-revocation case, the Court ruled that a preliminary, informal hearing was required "as promptly as convenient" after arrest while information is fresh and sources are available to determine whether there is probable cause for a violation of parole. The Court further ruled that the Constitution requires another more formal hearing prior to parole revocation; that hearing, the Court noted, "must lead to a final evaluation of any contested relevant facts and consideration of whether the facts as determined warrant revocation." Id. at 488, 92 S.Ct. 2593. That final hearing "must be tendered within a reasonable time after the parolee is taken into custody." Id. While the Court declined to announce a bright-line rule for reasonableness, it noted that two months, the lapse at issue in Morrissey, "would not appear to be unreasonable." Id.
¶ 11. The following year, in Gagnon v. Scarpelli, the Court applied Morrissey's logic to a revocation of probation, and held that "a probationer, like a parolee, is entitled to a preliminary and a final revocation hearing, under the conditions specified in Morrissey." Gagnon, 411 U.S. at 782, 93 *1281 S.Ct. 1756. The Court noted that, although there are "minor differences" between probation and parole, the revocation of the former is "constitutionally indistinguishable" from revocation of the latter. Id. at 782 n. 3, 93 S.Ct. 1756. This logic also holds true under the applicable Vermont statutes.
¶ 12. In Vermont, both probation and parole are statutorily defined. Parole is "the release of an inmate to the community by the parole board before the end of the inmate's sentence subject to conditions imposed by the board and subject to the supervision and control of the commissioner." 28 V.S.A. § 402(1). Probation is "a procedure under which a respondent, found guilty of a crime upon verdict or plea, is released by the court, without confinement, subject to conditions imposed by the court and subject to the supervision of the commissioner." 28 V.S.A. § 201. Although there are differences between probation and parole in Vermont, State v. Bensh, 168 Vt. 607, 607-08, 719 A.2d 1155, 1156 (1998) (mem.), as there are in the federal system, we agree with the Gagnon Court that the differences do not require any distinction between the two for purposes of our due-process analysis in this case.
¶ 13. Morrissey and Gagnon, taken together, mandate that a preliminary probation-revocation hearing be held promptly, and that a final revocation hearing be held within a reasonable time. We have not had cause to confront squarely the latter requirement, although many other courts have. See, e.g., United States v. Throneburg, 87 F.3d 851 (6th Cir.1996); United States v. Morales, 45 F.3d 693 (2d Cir. 1995); United States v. Rasmussen, 881 F.2d 395 (7th Cir.1989); United States v. Blunt, 680 F.2d 1216 (8th Cir.1982); State v. Jameson, 112 Ariz. 315, 541 P.2d 912 (1975); Dority v. State, 329 Ark. 631, 951 S.W.2d 559 (1997); State v. Inscore, 219 W.Va. 443, 634 S.E.2d 389 (2006).
¶ 14. Like many of the jurisdictions cited above, we assess the reasonableness of a delay in completing the final revocation hearing under the balancing test announced in Barker v. Wingo, 407 U.S. at 530, 92 S.Ct. 2182, which we have previously applied in other contexts. See State v. Turgeon, 165 Vt. 28, 35, 676 A.2d 339, 343 (1996) (failure to bring a defendant to trial within limits set by Administrative Order No. 5, § 2 is not per se deprivation of due-process rights; delay evaluated using Barker factors); State v. Percy, 158 Vt. 410, 420, 612 A.2d 1119, 1126 (1992) (assessing, under Barker, timeliness of criminal retrial after remand); State v. Unwin, 139 Vt. 186, 195, 424 A.2d 251, 257 (1980) (adopting Barker to assess defendant's claim that several months' delay in criminal trial violated Sixth Amendment). The Second Circuit has adopted Barker to assess delays in preliminary probation-revocation hearings arising under the federal probation-hearing statute in effect at the time. United States v. Companion, 545 F.2d 308, 311 (2d Cir. 1976).[3] We have not explicitly adopted the *1282 Barker factors in the probation-revocation context, and we take this opportunity to do so.[4]
¶ 15. The Barker Court identified four factors to be considered in evaluating whether a defendant has been deprived of the right to a speedy trial: "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." 407 U.S. at 530, 92 S.Ct. 2182.[5] Weighing the facts in the instant case in light of these factors, we conclude that defendant's right to a revocation hearing within a reasonable time was not violated.
¶ 16. We note, at the outset, that the Fourteenth Amendment protects citizens against deprivation of liberty without due process of law. The conditional liberty enjoyed by a nonincarcerated parolee or probationer falls within the due-process protection of the amendment. G.T. v. Stone, 159 Vt. 607, 610, 622 A.2d 491, 492 (1992). Here, however, it is at least arguable that defendantalready incarcerated for failure to make bail on criminal charges filed the same day as the VOP complaintwas not deprived of his liberty by the delay in holding the probation-revocation hearing. His incarceration does not, however, eliminate defendant's due-process interest in a timely final hearing. Even an incarcerated probationer has a due-process interest in a reasonably timely final revocation hearing. Delay in that hearing can prejudice an incarcerated probationer in much the same way as it would a nonincarcerated one, particularly diminishing the ability to prepare an effective defense, which is a core underpinning of both the speedy-trial and due-process guarantees. Accordingly, the fact of defendant's incarceration is to be weighed during the Barker balancing.
¶ 17. We turn to that balancing. The Barker Court characterized the first factor, length of delay, as "to some extent a triggering mechanism," noting that "[u]ntil there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors." Barker, 407 U.S. at 530, 92 S.Ct. 2182. There is no length of delay, however, that is per se prejudicial.[6] Here, the VOP complaint was filed and probable cause was found at a preliminary hearing on August 20, 2004. The revocation hearings began on October 18, 2004. Those hearings continued until March 29, 2005, and a written decision was not issued until April of 2005. Although Barker and the other cited cases *1283 arose from delays in the commencement of hearings while the instant case involves a delay in the completion of hearings that were timely commenced, the due-process concerns raised by the former are raised also by the latter. A defendant whose revocation hearing begins promptly but is then continued for an unreasonable period may suffer the same prejudice as one whose hearing is not commenced for an unreasonably long time. The delay in the instant case between the VOP complaint's filing and its dispositioneight months although not per se prejudicial, is sufficient to trigger an inquiry into the other Barker factors.
¶ 18. The second Barker factor, the reason for the delay, does not strongly support defendant's claim. The first month of the delay was due to defendant's motion to continue, and at least some of the subsequent months' delay is attributable to defendant's request to consider his motion to suppress along with the VOP complaint. Defendant makes no claim that the State was at fault in causing the delay, but asserts that the only reason for the delay was a lack of court resources. The Barker Court considered several possible reasons for delay, concluding as follows:
[D]ifferent weights should be assigned to different reasons. A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.
Barker, 407 U.S. at 531, 92 S.Ct. 2182. Here, the completion of the hearings was delayed in part because of a lack of court resources. Defendant would have remained incarcerated for failure to make bail regardless of the speed with which his revocation hearing was held, however, and the court's delay was also due to its effort to accommodate defendant's request for longer blocks of hearing time at which he would have time to cross-examine the State's witnesses on the same day as their direct examination. Accordingly, we do not find that the reason for the delay militates in favor of finding a constitutional violation in this case.
¶ 19. As to the third Barker factor, the State concedes that defendant asserted his right to have the VOP resolved in a timely manner, and so we move on to consider the fourth factor, prejudice to the defendant. Prejudice to the defendant is the most important factor in considering timely-hearing claims. Page, 171 Vt. at 115-16, 757 A.2d at 1042-43; see also, e.g., Mims v. LeBlanc, 176 F.3d 280, 282 (5th Cir.1999). The Barker Court identified three particular interests in light of which prejudice to defendants should be assessed: (1) preventing "oppressive pretrial incarceration," (2) minimizing "anxiety and concern of the accused," and (3) limiting "the possibility that the defense will be impaired." 407 U.S. at 532, 92 S.Ct. 2182. Because defendant was incarcerated for failure to make bail on other charges during the entire course of the revocation hearings, the first interest is not implicated here. The second interest is implicated only minimally, for the same reason. A defendant incarcerated for a reason other than the delay in the hearings cannot properly attribute his anxiety at being incarceratedor the prejudice it impliesto the hearing delays. The third interest, however, applies with equal force to a probationer incarcerated on other charges as to one incarcerated only due to *1284 the VOP. Defendant makes two general contentions in this regard. First, he claims that his ability to cross-examine was undermined by the fractured nature of the proceedings. Second, he argues that an out-of-state witness came to Vermont twice to appear at hearings, but was unable to appear on those days and unable to return again due to scheduling issues with her job, and that another witness was unable to appear due to the protracted nature of the hearings.
¶ 20. Like the Barker Court, we take the prospect of prejudice resulting from delay quite seriously, particularly where a defendant may have been rendered unable to adequately prepare a defense due to unnecessary delays in holding a final hearing. See id. ("[T]he inability of a defendant adequately to prepare his case skews the fairness of the entire system."). In this case, however, defendant's claims of prejudice are too speculativeparticularly in light of the fact that he was already incarcerated on other chargesto constitute a due-process violation. If the divided hearings might, to some degree, have reduced defendant's ability to examine witnesses effectively, defendant has presented no concrete examples of actual prejudice, and none are apparent from the record. Further, at the November 29, 2004 hearing at which counsel for defendant raised this issue, counsel herself characterizes the State's early witnesses as "pretty much pro forma," implying that no prejudice to defendant had resulted from the inability to cross-examine them immediately after direct examination. Counsel then suggested that the prejudice she feared would begin to accrue only when other, more substantive witnesses were called later, if subsequent hearings were as short as the first hearings and counsel was forced to cross-examine witnesses weeks or months after their direct examination.
¶ 21. Following defense counsel's objection to the "fractured" nature of the proceedings, the trial court agreed to attempt to find a larger block of time on a single day for subsequent hearings, but noted that it might be as much as two months before such a large opening in the court's calendar would be available. The next hearing was held on January 12, 2005. At that hearing, two witnesses were subject to both direct and cross-examination. Although the record does not reveal the exact length of the January hearing, the subsequent hearing on March 23, 2005, was a half-day long, apparently in response to defense counsel's oral request for a longer hearing. The delay between November and March, though greater than the two-month estimate the court gave in November, is at least partially attributable to defendant's request for longer hearings, which the court warned might cause delay. The fractured nature of the hearings does not tip the balance in favor of finding a due-process problem.
¶ 22. Defendant also claims that at least one witness was unable to appear as a result of the delay in holding the hearings. First, defendant notes that a rebuttal witness did not appear at the March 29 hearing, but the defense appears to have contacted that witness for the first time on the evening before the March 29 hearing, and he was never served with a subpoena to appear. While the failure of a witness to appear may in some cases be wholly attributable to delayas, for example, where the witness dies during the delay, United States v. Williams, 558 F.2d 224, 227-28 (5th Cir.1977)this witness's failure to appear was not due to delay at all. Rather, it seems that he did not appear because he was given relatively short notice by the defense, and was not subpoenaed.
*1285 ¶ 23. Second, the defense argues that defendant's mother was unable to testify at the March 29 hearing, though she had attended all of the previous hearings, because she feared losing her job if she missed work again. We note first, as the trial judge did, that the proffered testimony was, at best, peripherally relevant. Defense counsel stated that defendant's mother would corroborate the testimony of another witness about the whereabouts of certain prescription medication. Even had defendant's mother been available to testify, however, according to the proffer she would only have testified as to the location of some medication, and would not have testified that there were no pills or other drugs at defendant's house. Given the minimal relevance and probative value of the proffered testimony, defendant's mother's inability to testifywhich is arguably not properly attributed to the delay in any eventdid not violate defendant's right to a timely hearing.
¶ 24. Our weighing of the Barker factors leads us to conclude that defendant's due-process rights were not violated by the prolonged final revocation hearing in this case. We therefore affirm the district court's order denying defendant's motion to dismiss the VOP complaint and finding that defendant had violated his probation. Because we affirm the finding of a violation of probation, and because defendant claims no error in the district court's subsequent revocation of probation and imposition of defendant's underlying sentence, we also affirm both of those decisions.
Affirmed.
NOTES
[1] Defendant was charged under the former 13 V.S.A. § 2602 (lewd and lascivious conduct with child) and § 3252(a)(3) (engaging in sexual act with person under age sixteen). Both statutes have since been amended. See 2005, No. 192 (Adj.Sess.), § 8 (amending § 2602), § 10 (amending § 3252). All references in this opinion are to the pre-amendment statutes.
[2] The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. The Sixth Amendment right to a speedy trial is enforceable against the states by operation of the Fourteenth Amendment. Smith v. Hooey, 393 U.S. 374, 374-75, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969). Although the right to a speedy trial is not directly applicable to probation or parole revocation proceedings, Gagnon v. Scarpelli, 411 U.S. 778, 782, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), the federal courts that have considered the question have, almost without exception, used the Sixth-Amendment-derived logic of Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), and its progeny to analyze the closely analogous rights embraced by the Fifth and Fourteenth Amendments' due-process protections. See, e.g., Bryant v. Grinner, 563 F.2d 871, 872 (7th Cir.1977) (holding, in challenge to timeliness of parole-revocation hearing, that "the prisoner's right to release is to be determined by the standards prescribed in Barker v. Wingo").
[3] Defendant relies on Companion for the proposition that the delay before a final hearing was held in this case was per se unreasonable because it was far in excess of the eighty-seven-day delay in Companion. Companion, however, arose from an eighty-seven-day delay in holding a preliminary hearing, not a final hearing as in the instant case. 545 F.2d at 309. The defendant in Companion was arrested near Tucson, Arizona, spent two weeks in an Arizona jail, and then underwent a "circuitous" month long journey through Texas, Oklahoma, Kansas, Illinois, Indiana, and Pennsylvania before finally spending twenty-six days in a New York jail before a preliminary hearing in Vermont. Id. The distinction between preliminary and final hearings is centrally important in timeliness claims, and Companion therefore cannot bear the weight defendant places on it.
[4] We did, in State v. Page, 171 Vt. 110, 757 A.2d 1038 (2000), cite Barker in evaluating the timeliness of a probation-revocation decision, but we did not expressly adopt it, instead rejecting the defendant's due-process claim because no colorable claim of prejudice was made at all. See id. at 115, 757 A.2d at 1042 ("We doubt that the choice of a relevant standard will affect the outcome in this case."). Page involved a one-year delay between the conclusion of the revocation hearing and the issuance of the decision thereon. Id.
[5] To these four factors some courts have added a fifth in the context of already-incarcerated probationers: the reason for the incarceration. See, e.g., United States v. Scott, 850 F.2d 316, 320 (7th Cir.1988) (citing Moody v. Daggett, 429 U.S. 78, 86-87, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976)). We do not follow the Scott court in doing so.
[6] In Bryant, 563 F.2d at 871-72, for example, the Seventh Circuit abandoned its former presumption of prejudice in delays greater than three months and mandated a case-by-case weighing of the Barker factors to determine whether a parolee was denied the due-process right to a timely final hearing. Although Bryant is plainly distinguishable on its facts from the case at bar, we agree with the Bryant court that a per-se-prejudice rule is unnecessary.