Filed 10/27/25

| | | |
|---|---|---|
| VERMONT SUPERIOR COURT<br>Chittenden Unit<br>175 Main Street<br>Burlington VT 05401<br>802-863-3467<br>www.vermontjudiciary.org |  | CIVIL DIVISION<br>Case No. 25-CV-04489 |

Jennifer Cepeda v Vermont Parole Board et al

## FINAL ORDER

Jennifer Cepeda is currently incarcerated at the Chittenden Regional Correctional Facility in South Burlington (CRCF). She has been charged with violating her parole agreement and the Parole Board is holding her without bail pending her hearing. Ms. Cepeda's revocation hearing was scheduled for October 15, but the Board continued the hearing for an additional fifteen days because DOC failed to subpoena the complaining witnesses, and Ms. Cepeda did not waive her right of confrontation.

Ms. Cepeda asserts that she is entitled to habeas relief because the Board violated her confrontation rights when it continued the hearing, and the continuance violated her due process rights. She argued at the hearing that she should be immediately released either because the hold without bail order must be struck at this time or because the parole violation must be dismissed without prejudice.

The Court held a hearing on October 24 to consider the petition. Jill Martin appeared on behalf of Ms. Cepeda and Brendan Sage appeared on behalf of the Vermont Parole Board and the Department of Corrections (DOC).

The Court denies the request for the issuance of a writ of habeas corpus.

### Facts Asserted in Petition

The Court accepts as true the facts asserted in the petition based on the agreement of the parties at the hearing. On March 24, 2025, Ms. Cepeda was placed on parole and released from CRCF. On August 21, 2025, Ms. Cepeda's parole officer filed a violation report alleging that Ms. Cepeda had violated conditions one and five of her parole agreement. The Parole Board ordered Ms. Cepeda to be arrested. On September 5, 2025, Parole Board Vice Chair Patricia Boucher

held a probable cause and bail hearing for Ms. Cepeda. Ms. Cepeda waived probable cause and sought release to inpatient treatment. Ms. Boucher denied Ms. Cepeda's request for release and ordered her held without bail: "Release decision based on: Has several pending charges and has no residence at this time. Based on her pending charges I find she is a risk to public safety." The Board set a parole violation hearing on September 9, 2025.

Ms. Cepeda was charged in the Chittenden Criminal Division with two offenses: Disorderly Conduct, in violation of 13 V.S.A. §1026(a)(1), and Aggravated Domestic Assault, in violation of 13 V.S.A. § 1043(a)(2). The Criminal Court ordered Ms. Cepeda to be released and subject to several conditions, including numbers 1, 2, 13, 14, and 15. Ms. Cepeda remained incarcerated due to the Parole Board's hold without bail order.

Prior to the September 9, 2025 final violation hearing, Ms. Cepeda asked to continue the hearing to prepare a defense with her attorneys. At oral argument, counsel for Ms. Cepeda stated she believed they asked for a thirty-day continuance. The Board re-scheduled Ms. Cepeda's hearing for October 15, 2025.

In advance of the final hearing, on October 9, Ms. Cepeda's attorney sent an email to the Parole Board office, Ms. Cepeda's parole officers, and the Assistant Attorney General who was acting as counsel to DOC at the time, indicating that Ms. Cepeda was not waiving her right to confront the witnesses against her. Ms. Cepeda asked that DOC produce "all relevant witnesses," including the complaining witness, the individual who made the call to police, and any law enforcement officers who responded to the call.

Subpoenas were not issued and the only witness present at the hearing for DOC was Julie Cadorette, one of Ms. Cepeda's parole officers. At the revocation hearing on October 15, Ms. Cepeda denied the alleged violations and the DOC started to present its case. Ms. Cadorette began testifying about statements allegedly made by a complaining witness. Ms. Cepeda objected on the basis that she had not waived her right to confrontation. The Board went into an executive session and announced that it was continuing Ms. Cepeda's violation hearing until October 30 to allow the DOC to subpoena the necessary witnesses. Neither Ms. Cepeda nor the DOC had requested a continuance of the hearing.

The parties stipulated at the hearing on October 24 that after Ms. Cepeda filed her habeas petition, the Board offered to move the continued violation hearing up one week, to October 23.

However, both the parole officer and counsel for Ms. Cepeda said they were not available the morning of October 23, so the final hearing remained scheduled for October 30.

## Issues Before the Court

The Court sees the issues slightly differently than how Ms. Cepeda framed them: (1) whether requiring Ms. Cepeda to remain incarcerated during the continuance, for an additional fifteen days, violates her rights to due process, and (2) whether Ms. Cepeda's due process rights were violated as a result of the Board's decision to continue the parole revocation hearing without either Ms. Cepeda or the DOC asking for a continuance to allow DOC to subpoena witnesses with first-hand information.

The Court does not address the confrontation issue because the Board did not deny Ms. Cepeda's right to confront witnesses. The Board heard hearsay evidence at the October 15 hearing but did not issue a decision based on that evidence. It instead delayed the hearing so that it could hear from the eyewitnesses, and Ms. Cepeda could confront the witnesses against her. The issues are the delay and the continuing incarceration, and whether the Board had the authority to take the action it did.

The Court refers to its ruling on the motion to dismiss in response to Respondents' argument that habeas relief is improper because Ms. Cepeda had alternative avenues for relief. See Order Denying Motion to Dismiss dated October 23, 2025.

## Analysis

Under Vermont law, "[a] person imprisoned in a common jail . . . may prosecute a writ of habeas corpus to inquire into the cause of such imprisonment or restraint, and obtain relief therefrom if it is unlawful." 12 V.S.A. § 3952. "[B]oth the State and the parolee have strong interests in having parole violations 'justified and based on an accurate assessment of the facts.'" *Relation v. Vt. Parole Bd.*, 163 Vt. 534, 539 (1995) (quoting *Wolff v. McDonnell*, 418 U.S. 539, 561 (1974)); *see Hanton v. Warden*, No. CV084002247S, 2009 WL 1663749, at *10 (Super. Ct. Conn. May 21, 2009) (Board's inability to adhere to time frames specified by state regulations do not "somehow render [parolee's] present confinement illegal").

This is consistent with the Board's policy related to parole revocation hearings:

It is the policy of the Vermont Parole Board to provide timely, fair, and impartial hearings that comport with due process to those parolees who are, while on parole, alleged to have violated the terms and conditions of their parole, while protecting the public and the integrity of the parole system. The Board will accomplish this by making reasoned and rational violation decisions that are based upon good and sufficient information.

Vt. Parole Board Manual, ch. 15, p.35.

"'The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.'" *Heim v. Touchette*, No. 2019-288, 2020 WL 1695406, at *2 (Vt. Apr. 3, 2020) (unpub. mem.) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)). To "prove a violation of due process, [she] must show that [she] suffered actual prejudice to the conduct of [her] defense and that the delay was intentional and caused by a desire to gain tactical advantage." *State v. Ellis*, 149 Vt. 264, 268 (1988) (citing *United States v. Marion*, 404 U.S. 307, 324 (1971)). "[R]evocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations." *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972). "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Id.* at 481.

In parole revocation proceedings, due process protections include "an informal hearing structured to assure that the finding of a parole violation will be based on verified facts and that the exercise of discretion will be informed by an accurate knowledge of the parolee's behavior." *Id.* at 484. "The revocation hearing must be tendered within a reasonable time after the parolee is taken into custody." *Id.* at 488. The *Morrissey* Court determined that a "lapse of two months . . . would not appear to be unreasonable." *Id.*; *cf. People ex rel. Alexander v. LeFevre*, 498 N.Y.S.2d 485, 487 (N.Y. App. Div. 1986) (where final revocation hearing must take place "at the first available opportunity," 26-month delay was too long; citing other cases holding 17 months, 18 months, and 19 months also too long to wait for hearing to take place).

I. <u>Timing of the Delay</u>

Consistent with Vermont's laws governing parole, the Vermont Parole Board Manual provides that a final parole violation hearing "shall be conducted within 30 days of the date of arrest." Vt. Parole Board Manual, ch. 15, §VI(B); 28 V.S.A. § 403(2). Ms. Cepeda was arrested on August 21 and her violation hearing was initially scheduled for September 9, which is 19 days after

her arrest. Ms. Cepeda asked for a 30-day continuance to consult with counsel, and the Board rescheduled the hearing for October 15. The Board then continued the hearing an additional fifteen days to October 30.

The timing of the hearings in this instance do not violate due process. The initial hearing was scheduled within 19 days. The initial continuance is attributable to Ms. Cepeda's request for time to investigate the charges against her and not either Respondent. The additional delay attributable to Respondents from October 15 to October 30 brings the total time from arrest to a final hearing to 34 days. While this is four days beyond the time limit in the statute, that is not a per se violation of due process. *Heim v. Touchette*, 2020 WL 1695406, at *2.

In *Heim*, the incarcerated petitioner argued that his furlough status was wrongfully suspended because his hearing was scheduled beyond the 4-day deadline in the department directive. The Supreme Court wrote: "As an initial matter, we agree with the State that a violation of the applicable Department Directive, standing alone, does not compel vacating the furlough violation determination." *Id.* Recognizing the liberty interest that exists in having furlough status, the *Heim* Court noted that the petitioner had made no showing that the DOC had failed to give him notice of the claimed violations and evidence against him, an opportunity to be heard and present evidence, the right to confront witnesses, a neutral adjudicator, or a written statement of the basis for the change in status. *Id.* The three-justice panel held that the petitioner "failed to demonstrate how the minimal [three-day] delay in holding the suspension hearing prejudiced him in a manner that impacted his due process rights." *Id.*

Vermont analyzes delays in adjudication of a criminal matter under the rubric set forth in *Barker v. Wingo*, 407 U.S. 514 (1972). *State v. Benjamin*, 2007 VT 52, ¶¶ 14–15, 182 Vt. 54. The *Barker* factors are: "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." 407 U.S. at 530.

The first factor is whether a delay is so long that it is presumptively prejudicial. *Benjamin*, 2007 VT 52, ¶ 17. Ms. Cepeda has not cited to any authority to support the argument that the fifteen-day delay between the two hearings and the 34 days since arrest qualify as presumptively prejudicial. Nor is the Court aware of any such case law. This analysis does not even consider the Board's attempt to move the final hearing to October 23, which would have kept the hearing within the 30-day period set forth in the Manual and statute, not counting the delay attributable to Ms. Cepeda.

Because this delay is not presumptively prejudicial, the Court does not need to address the remaining factors. *Id.* at ¶17. However, the Court briefly notes the following.

Ms. Cepeda failed to carry her burden on the second factor, the reason for the delay. The first delay from September 9 to October 15 was caused by Ms. Cepeda. The second delay of fifteen days was caused by the Board, because DOC did not timely subpoena witnesses for the hearing. There was no evidence presented about the reason for this delay, other than to allow the Board and Ms. Cepeda to hear the testimony of the relevant witnesses. While the Board had other options when DOC failed to produce the witnesses – decide the case based on DOC's failure to carry its burden, dismiss the case, invoke the Board's authority to disallow confrontation for good cause, or continue the hearing for fifteen days – it continued the hearing presumably to decide the case based on "good and sufficient information."

Nor can Ms. Cepeda satisfy the fourth factor and show any actual prejudice to her. As *Benjamin* explains, "the *Barker* Court identified three particular interests in light of which prejudice to defendants should be assessed: (1) preventing 'oppressive pretrial incarceration,' (2) minimizing 'anxiety and concern of the accused,' and (3) limiting 'the possibility that the defense will be impaired.'" *Benjamin*, 2007 VT 52, ¶ 19 (quoting *Barker*, 407 U.S. at 532). Her ability to prepare her defense, call her own witnesses, confer with her attorney, and confront the evidence against her are not impaired by this short delay. While she is experiencing additional pretrial incarceration of fifteen days, this is not enough to establish the prejudice needed under this analysis.

There is no dispute about the third factor, that Ms. Cepeda asserted her right to have the parole violation charges resolved in a timely manner. Ms. Cepeda cannot meet her burden under the *Barker* factors.

II. <u>Board's Authority to Continue the Hearing</u>

Next, the Court turns to whether the Board's actions in delaying this case on its own motion violated due process. This is Ms. Cepeda's stronger argument, but she still cannot carry her burden.

Administrative agencies have the intrinsic authority to manage their own calendars. *City of San Antonio v. C.A.B.*, 374 F.2d 326, 329 (D.C. Cir. 1967); *see also* 2 Charles H. Koch, Jr., *Admin. L. & Prac.* § 5:41 (3d ed.) (whether to grant or deny a continuance is in the "sound discretion of the administrative judge"). The Parole Board's rules do not have a provision that allows for

continuances at final parole violation hearings. *But see* Vt. Parole Board Manual, ch. 10, §III.A (explicitly allowing for continuances in initial hearing deciding whether to grant parole). The Vermont Supreme Court has acknowledged that a parolee may ask for a continuance of a revocation hearing for the purpose of confronting a witness who accused him of violating a condition of parole. *Watker v. Vt. Parole Bd.*, 157 Vt. 72, 78 (1991).

At oral argument, Ms. Cepeda relied on *United States v. Karnes*, 531 F.2d 214 (4th Cir. 1976), to support her argument that the Board violated due process when it delayed the case to give DOC time to call the witnesses it needed to make out its case. The *Karnes* court noted that due process "requires that a court be impartial." *Id.* at 216. It stated that "[t]his impartiality is destroyed when the court assumes the role of prosecutor and undertakes to produce evidence, essential to overcome the defendant's presumption of innocence, which the government has declined to present." *Id.* at 216-17.

In that case, the government would not call certain witnesses because it could not "vouch for their candor." *Id.* at 216. Without those witnesses, the government could not meet its burden to prove its case. *Id.* The trial court called the witnesses itself, and the Fourth Circuit reversed. The Fourth Circuit did not doubt the trial court's intentions – to ensure the jury had before it all relevant evidence, and to allow both parties to cross-examine the witnesses. *Id.* at 217. But, the trial court improperly put its thumb on the scale and in effect elevated those witnesses by calling them itself.

While the Court finds the reasoning of *Karnes* persuasive, it is in a different context. There is no concern about biasing a jury here. Critically, parolees who have already been convicted of crimes do not have the same due process rights as criminal defendants who are still innocent before the law. *Morrissey*, 408 U.S. at 480.

The facts of this case are also different. The Board has not actually called these witnesses. It has only continued the hearing to allow DOC to call witnesses the Board wants to hear from and who Ms. Cepeda's attorney identified as witnesses she wished to confront. The Board has the implicit power to schedule its calendar, which includes continuing hearings, which the Board has already done by granting Ms. Cepeda a continuance. In addition, based on representations made at the hearing on October 24, the Court understands that the Board regularly continues violation hearings at the request of parolees. While the absence of a rule in the Parole Board Manual specifically governing continuances of final violation hearings complicates the analysis here

unnecessarily, it does not decide the issue. As noted above, it is not a per se violation of due process when an administrative agency extends a hearing beyond the time period set forth in its rules.

Without a Board rule that prohibits continuances, Ms. Cepeda has not presented facts that prove that the continuance was motivated by bad faith or that she suffered prejudice in her ability to present her case. *See Ellis*, 149 Vt. at 268. This finding of the absence of bad faith is buttressed by the Board's attempt to move the hearing up a week, to October 23.

The absence of a rule governing continuances in parole violation hearings creates some concerns for the Court. It raises questions such as what would happen if DOC asked for another continuance on October 30? This issue is not before the Court, but the lack of a rule governing requests for continuances means there is no specific standard by which to measure the granting of those requests by the Board. At a certain point, multiple requests that keep Ms. Cepeda incarcerated would certainly raise deeper concerns about due process.

## ORDER

This is a close case, and the issue of further continuances, especially those that would bring the final hearing further away from the date of the arrest are concerning to the Court. However, on the facts of this case at this time the Court denies the request for the issuance of a writ of habeas corpus.

Electronically signed on October 27, 2025, pursuant to V.R.E.F. 9(d).

Navah C. Spero
Superior Court Judge