## State of Vermont v. Bernard H. Lynaugh

[530 A.2d 555]

No. 86-208

Present: Allen, C.J. and Peck, J., and Barney, C.J. (Ret.), Costello, D.J. (Ret.) and Martin, Supr. J., Specially Assigned

Opinion Filed May 8, 1987

*Robert M. Butterfield,* Caledonia County Deputy State's Attorney, St. Johnsbury, for Plaintiff-Appellee.

*Richard A. Axelrod* and *Steven A. Adler* of *Gensburg & Axelrod,* St. Johnsbury, for Defendant-Appellant.

**Barney, C.J.** (Ret.), Specially Assigned. The Caledonia Circuit of the district court held a hearing under 23 V.S.A. § 1205(a) to determine whether the defendant had refused to submit to an evidentiary test designed to determine his blood alcohol content in connection with a charge of driving while intoxicated. The district court took testimony and received exhibits, made findings of fact and determined that there had been a refusal. The matter was referred to the Caledonia Superior Court for review. That court heard oral argument and reviewed the record, but heard no testi-

mony. It, in turn, issued findings of fact and conclusions of law which validated the decision of the district court. The matter was brought here by notice of appeal. We affirm.

The defendant raises two issues: The first is that the proceedings in superior court should have taken the form of a de novo hearing. The second is that because the defendant ultimately offered to take a test, he should have been allowed to, and therefore there was no refusal at law.

The defendant was observed driving eratically in St. Johnsbury by two local police officers at about 8:40 p.m. When the officers stopped the pick-up involved, the defendant exited the driver's side and fell against the body of the truck. There were no defects in the road surface. He was asked for his license, but had difficulty in finding it. When he went to look in the cab, he completely lost his balance and stumbled. The officers testified, and the court found, that there was a strong odor of alcohol on his breath, his speech was slurred, he swayed and his eyes were bloodshot and watery. The defendant was then asked by the officers to perform some field sobriety tests and he said, "I can't pass them. You've got me."

He was then taken to the station for processing. By this time it was about nine o'clock. The defendant was given the *Miranda* warnings and then the arresting officer read to him the rather extended form by which his rights under the implied consent law are spelled out and his response to a test request is recorded. Both officers were certified to operate breath testing equipment.

The defendant indicated that he did not understand the *Miranda* warnings. The officer read them to him, but got no acknowledgement. The defendant also indicated he did not understand his rights relative to the breath test when they were read to him. The arresting officer then read the form sentence by sentence, inquiring at the end of each sentence as to whether the defendant understood. With each affirmative answer the officer moved on to the next sentence. At the end of the form, when the officer asked him if he understood what the officer had read to him, the defendant said he did not.

The officer then asked the defendant if he would like to speak to an attorney. The defendant said, "No." The officer asked him if he would consent to a breath test. The defendant said, "No." At that point, in spite of the defendant's earlier rejection of an offer to get him counsel, the arresting officer, acting on his own,

made arrangements for the defendant to confer privately with a lawyer. By this time it was 9:15 p.m.

The defendant did speak with the attorney for some four or five minutes. After that consultation the officer again read the refusal form to the defendant and asked him if he would take the test. The defendant remarked that the officer did not ask him to take the test "the first time" and therefore the officer "blew it." The officer repeated the request and the defendant again refused to take the test. That refusal was minuted at 9:26 p.m. The officer then proceeded to fill out an arrest report and the defendant refused to answer any questions.

During the time the defendant was being processed he was told not to smoke. It was argued that smoking could cast doubt on any breath test, but this does not appear in the findings. He was also preemptorily ordered to stay seated when he attempted to get up. It is conceded that the defendant was difficult to process. The officer's report shows defendant as both difficult and arrogant. The reviewing court commented that the officers exhibited patience throughout.

The second officer had little or nothing to do with the processing, but in assembling the crimper device for possible use in testing, he fumbled with the filter and almost dropped it. The defendant expressed concern about this. This officer was also certified to give tests by the Criminal Justice Training Council.

After the arresting officer had told the defendant that processing was complete and he was free to go, and he had been given a citation to appear in court, the defendant's wife arrived to take him home. On his way out of the station the defendant indicated to the second officer that he was willing to have that officer give him a test. He was told it was too late. The request form shows the processing was complete at 9:47 p.m.

As part of its findings and conclusions of law the court found that the defendant was not subjected to any unauthorized police action. The court specifically concluded that the actions of the police did not cloud the voluntary nature of the defendant's decision to refuse the test.

■ The summary refusal hearing provided for in 23 V.S.A. § 1205(a) is in the nature of an administrative proceeding, civil in nature. *State* v. *Dellveneri*, 128 Vt. 85, 88, 258 A.2d 834, 836 (1969). The issue is whether or not the defendant should continue to be privileged to operate a motor vehicle as a licensed driver for

a six-month period, an issue for which the legislature has given no statutory right to an appeal. *Miner* v. *District Court*, 136 Vt. 426, 429, 392 A.2d 390, 392 (1978). In such a case the review available is that provided by way of a proceeding for extraordinary relief in the nature of a writ of certiorari ordinarily brought, as this case was, in superior court. See V.R.A.P. 21; *Pfeil* v. *Rutland District Court*, 147 Vt. 305, 308, 515 A.2d 1052, 1054-55 (1986); *Miner*, 136 Vt. at 431, 322 A.2d at 393 (Billings, J., concurring). A hearing on such a petition is not de novo and, unlike an appeal, reaches only questions of law and is discretionary according to the merits of the case made by the petition and the record. *In re Davenport*, 129 Vt. 546, 554, 283 A.2d 452, 455 (1971). For many, many years the practice in this jurisdiction had been to hear the merits of the case upon the petition for the writ and usually dispose of the whole case upon the granting or refusal of the writ. *Davidson* v. *Whitehill*, 87 Vt. 499, 502, 89 A. 1081, 1082 (1914). Although the language of the lower court speaks in terms of affirmance of the district court ruling, we will treat it as a denial of the issuance of a writ of extraordinary relief, which is its substance. Cf. *Town of Barnet* v. *New England Power Co.*, 130 Vt. 268, 271, 291 A.2d 396, 398 (1972); *In re W. H.*, 144 Vt. 595, 600-01, 481 A.2d 22, 26 (1984).

■ Aside from questioning the proper form of the proceedings, the defendant claims error in the failure of the officer accompanying the arresting officer to respond favorably to his ultimate indication of willingness to take a test. However, this case does not raise the issue of how processing officers ought to respond to good faith and timely changes of mind on the part of a defendant confronted with the decision whether or not to submit to a blood alcohol test. The argument of the defendant overlooks or seeks to discredit the prolonged interchange with that defendant seeking to resolve the testing issue. We are bound to accept the record below as the court established it. The discretionary decision of the trial judge that extraordinary relief ought not to be granted in this case is sufficiently supported at law so that this Court must affirm the ruling below.

*The lower court's denial of the issuance of a writ in the nature of certiorari is affirmed.*