## State of Vermont v. Brian Bohannon

[996 A.2d 196]

No. 08-508

Present: **Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.**

Opinion Filed March 11, 2010

*William H. Sorrell,* Attorney General, and *Kevin O. Leske,* Assistant Attorney General, Montpelier, for Plaintiff-Appellee.

*Allison N. Fulcher* of *Martin & Associates,* Barre, for Defendant-Appellant.

¶ 1. **Johnson, J.** At the conclusion of a probation violation merits hearing, defendant was found to have violated the conditions of his probation by leaving the state of Vermont without permission or notice to his probation officer and taking up residence in the state of Washington. The Department of Corrections (DOC) subsequently moved for an order requiring defendant to pay restitution to the DOC for the costs of extraditing defendant from Washington to Vermont. The Lamoille District Court granted this motion, and defendant appeals, arguing that violation of probation is not a "crime" and that extradition costs flowing from a probation violation do not fall within the ambit of the restitution statute. Because we agree that a probation violation by itself is not a crime for the purposes of the restitution statute, we vacate the order awarding restitution to the DOC.

¶ 2. The following facts are undisputed. In August 2004, defendant was convicted of unlawful restraint and simple assault in Lamoille District Court. He was sentenced to one to three years of jail time, all but thirty-two days of which were suspended. Defendant was placed on probation, which included the following conditions:

G.   If you change your address or move, you must tell your probation officer within two (2) days.

I.   You can not leave the State without written permission of your probation officer.

¶ 3. In July 2007, defendant failed to appear for a violation of probation merits hearing. In August 2007, defendant's probation officer requested an arrest warrant, and in August 2008, defendant was located at the Pierce County Jail in Tacoma, Washington. In September 2008, defendant's probation officer prepared and issued a Governor's warrant to extradite defendant from Washington to Vermont.

¶ 4. Defendant's probation was subsequently revoked. The DOC then filed a motion in the Lamoille District Court requesting a restitution judgment order pursuant to 13 V.S.A. § 7043(a) to recover the $4,416 it incurred in transporting defendant from Washington to Vermont. The trial court conducted a hearing on this motion and ruled that the DOC was entitled to restitution. The court concluded that "this probation violation situation is not materially different than a new criminal charge for purposes of [a restitution] proceeding." With regard to whether defendant had the ability to pay the restitution amount, the court held that "[g]iven the fact that he is incarcerated, I will not make an order for collection at the present time and will not make a determination on ability to pay because those circumstances could very well be different when and if a collection attempt is made upon his release."

¶ 5. On appeal, defendant questions the district court's interpretation of § 7043(a). Specifically, defendant argues that to be entitled to restitution, the injured party must be a victim of a crime and that because violation of a condition of probation is not a crime in and of itself, the district court erred in holding that the DOC was entitled to collect restitution as reimbursement for extraditing defendant from Washington. Whether the district court properly construed the controlling criminal statutes is a question of law that we review de novo. See *State v. Bonvie*, 2007 VT 82, ¶ 6, 182 Vt. 216, 936 A.2d 1291; *State v. Eldredge*, 2006 VT 80, ¶ 7, 180 Vt. 278, 910 A.2d 816.

¶ 6. The relevant restitution statute provides for restitution to be considered "in every case in which a victim of a crime . . .

has suffered a material loss." 13 V.S.A. § 7043(a)(1). The statute goes on to define material loss as "uninsured property loss, uninsured out-of-pocket monetary loss, uninsured lost wages, and uninsured medical expenses." *Id.* § 7043(a)(2). Section 5301(4) defines "victim" as "a person who sustains physical, emotional or financial injury or death as a direct result of the commission or attempted commission of a crime or act of delinquency and shall also include the family members of a minor, incompetent or a homicide victim." The purpose of restitution is to compensate the victim, rather than to punish the defendant. See *State v. VanDusen*, 166 Vt. 240, 244, 691 A.2d 1053, 1055 (1997) (noting that restitution statute "is based on the principle of compensation to the victim, rather than punishment of the defendant"). Further, we have held that the statute is not to be used as a device "to shift the costs of prosecution to the defendant by providing a detour around the statutes placing that burden on the State." *State v. Forant*, 168 Vt. 217, 221, 719 A.2d 399, 402 (1998).

¶ 7. Whether the district court's restitution order was proper here turns on whether a probation violation is a separate crime out of which extradition costs necessarily result. The district court, applying our analysis in *State v. Lewis*, 167 Vt. 533, 711 A.2d 669 (1998), concluded it is. The facts of *Lewis*, however, are readily distinguishable from the instant case. In *Lewis*, we held that, under our restitution statute, the DOC was entitled to reimbursement for the costs of extraditing a defendant after he had failed to return from a work furlough program and escaped to North Carolina in violation of 13 V.S.A. § 1501. 167 Vt. at 540, 711 A.2d at 673-74. We concluded that the DOC was a victim for the purposes of the restitution statute, and that it had suffered a material loss in the form of the costs of extradition as a direct result of the defendant's escape. *Id.* Defendant argues that the factual situation in *Lewis* — most notably, the fact that the underlying offense involved a separate criminal charge of escape — differs from the noncriminal probation violation here. We agree.

■ ¶ 8. According to the law governing probation, "[a]fter passing sentence, a court may suspend all or part of the sentence and place the person so sentenced in the care and custody of the commissioner upon such conditions and for such time as it may prescribe." 28 V.S.A. § 205(a)(1). Thus, probation conditions operate as a contract between the probationer and the court. See *State v. Page*, 171 Vt. 110, 114, 757 A.2d 1038, 1041-42 (2000) ("[W]e must

construe the probation agreement according to contract principles . . . ."); *State v. Lockwood*, 160 Vt. 547, 552, 632 A.2d 655, 659 (1993) ("Probation is intended to allow a defendant an opportunity for rehabilitation at the same time it protects society."); *State v. St. Francis*, 160 Vt. 352, 355, 628 A.2d 556, 558 (1993) (noting that conditions included in probation order formed contract between probationer and court); *State v. Hale*, 137 Vt. 162, 164, 400 A.2d 996, 998 (1979) (noting that purpose of probation is "to provide the opportunity for a defendant to voluntarily condition his behavior according to the requirements of the law and to test his ability to do so"). If a defendant chooses to ignore the conditions of his probation, he breaches his part of the bargain and his probation may be revoked.

■ ¶ 9. Probation is thus "a conditional exemption from punishment, rather than a part of the penalty." *Williams v. State*, 528 A.2d 507, 508 (Md. Ct. Spec. App. 1987) (superseded by statute on other grounds); see also *Jones v. United States*, 560 A.2d 513, 516 (D.C. 1989) ("[T]he only appropriate sanction [for a violation of probation] is a withdrawal of the previously afforded favorable treatment rather than the imposition of an additional penalty."). Probation is, in effect, a second chance for a probationer to avoid a normal penalty attached to a criminal violation and prove that he can function as a law-abiding citizen. Upon a breach of a probation condition, a defendant effectively forfeits the benefits of probation and is put back in the circumstances he would have faced but for the probation (i.e., the original sentence).

■ ¶ 10. On its face, the restitution statute simply is not applicable to situations where no crime has occurred. See 13 V.S.A. § 7043(a)(1) (allowing restitution in cases where "victim of a *crime* . . . has suffered a material loss" (emphasis added). The breach of a probation condition stands in contrast to the separate criminal offense of escape we found to trigger the restitution statute in *Lewis*.[1] See *State v. Brunet*, 174 Vt. 135, 141, 806 A.2d 1007, 1011 (2002) ("[I]t is universally acknowledged that a [probation] revocation proceeding is not essentially 'criminal' in na-

---

[1] In *Lewis*, the relevant escape statute states in part that "[a] person who, while in lawful custody . . . fails to return from furlough to the correctional facility at the specified time . . . and while still serving a sentence, shall be imprisoned for not more than five years or fined not more than $1,000.00, or both." 13 V.S.A. § 1501(b).

ture."). Other courts have made a similar distinction between a probation violation and the underlying crime. See *United States v. Cavender*, 578 F.2d 528, 535 (4th Cir. 1978) (Widener, J., concurring) (concluding that conviction of a probation violation is not a crime for the purposes of federal evidentiary rules); *People v. Kaczmarek*, 628 N.W.2d 484, 487 (Mich. 2001) ("[V]iolation of probation is not a crime, and a ruling that probation has been violated is not a new conviction. . . . Instead, revocation of probation simply clears the way for a resentencing on the original offense."); *State v. Redifer*, 215 S.W.3d 725, 735 (Mo. Ct. App. 2006) (concluding that "violation of the conditions of probation is not a criminal offense, and a proceeding to revoke obviously is not a criminal prosecution." (quotation omitted)); *State v. Ortega*, 2004-NMCA-080, ¶ 8, 93 P.3d 758 (Ct. App.) ("A probation violation is not a crime and does not trigger an enhancement as a habitual offender."). It follows, therefore, that a probation violation is not a separate crime, sufficient to independently trigger the restitution statute.

¶ 11. Nor can we credit the State's argument that the crimes triggering the restitution statute are actually the underlying crimes of unlawful restraint and assault and not the probation violation. There is an obvious connection between a suspended sentence imposed for an underlying crime and the reimposed sentence following a defendant's violation of probation conditions. The reinstatement of an original sentence following a probation violation, however, does not transform a probation violation and an underlying criminal offense into the same act. See *Brunet*, 174 Vt. at 140, 806 A.2d at 1011 ("Any sentence imposed as a result of revocation is not premised on the new criminal charges, but derives exclusively from the original sentence on the earlier offense."). Indeed, our case law distinguishing probation revocation hearings from criminal proceedings supports this distinction. See *Lockwood*, 160 Vt. at 552, 632 A.2d at 659 ("The purpose of a revocation hearing is not to determine defendant's culpability, but rather to decide whether the alternatives to incarceration which have been made available to a defendant remain viable for him." (quotation omitted)).

¶ 12. Moreover, even if we were to accept the State's argument that the crime referred to in the restitution statute is the underlying crime, the link between the crimes of unlawful

restraint and assault to the extradition costs incurred by the DOC is simply too tenuous to trigger restitution. See *Forant*, 168 Vt. at 222-23, 719 A.2d at 403 ("An order of restitution must relate directly to the damage caused by the defendant's criminal act for which he was convicted. If there is no direct link between the crime and the restitution, the claimed damage may not be awarded under § 7043."); *Lewis*, 167 Vt. at 538-39, 711 A.2d at 673 (noting that restitution is available to "the immediate and intended victim of defendant's criminal conduct"); *State v. Knapp*, 147 Vt. 56, 60, 509 A.2d 1010, 1012 (1986) ("An order of restitution must relate to the damage caused by the criminal conduct for which the defendant was convicted.").

¶ 13. Our analysis in *Knapp* and *Forant* is instructive. In *Knapp*, we refused to allow restitution when the trial court failed to make the "vital link-up" between the criminal conduct and the damage caused. 147 Vt. at 60, 509 A.2d at 1012. Because the damages that were the subject of the restitution order were a result of an unlawful mischief charge of which the defendant was acquitted and not the conduct of which the defendant was actually convicted, we held that the restitution order was impermissible. *Id.* Similarly, in *Forant*, we refused to allow restitution where the expenses incurred by the victim changing her locks and obtaining a new telephone number were not a direct result of the domestic assault crime for which the defendant was convicted and sentenced, but instead were expenses incurred to restore the victim's sense of security related to the fear of future crimes. 168 Vt. at 223, 719 A.2d at 403. We concluded that this interpretation of the restitution statute was proper because our statute is "narrower" than restitution statutes in other jurisdictions and requires "that a compensable loss be material and flow from a direct injury to person or property." *Id.* at 225, 719 A.2d at 404.

¶ 14. Here, the expenses for which restitution is being sought are not the direct result of the crime for which defendant was convicted and sentenced. Instead, the expenses associated with extradition are directly related to the separate probation violation and cannot be made the subject of a restitution order.

¶ 15. Finally, in urging us to tie the crimes of unlawful restraint and assault to the extradition costs incurred following the probation violation, the State isolates and emphasizes particular language found in *Lewis*. We noted in *Lewis* that because the

defendant had been in the custody of the Commissioner of Corrections prior to his escape, his extradition was not a cost of prosecution but instead was "more closely related to his earlier conviction and sentence for assault, robbery, and kidnapping than to his subsequent prosecution for escape." 167 Vt. at 535-36, 711 A.2d at 671. The State, however, takes this language out of context. First, this observation obviously flows from the words of the escape statute, which provides for varying sentences following escape depending on the nature of the underlying conviction. Second, this discussion — and indeed most of the discussion in *Lewis* — focuses on whether extradition in that case amounted to a "cost of prosecution" under 13 V.S.A. § 7172(b), not on whether escape in and of itself is a "crime" under § 7043(a) (it clearly is). Unlike *Lewis*, here, a separate crime triggering the restitution statute has not been committed; therefore, the analysis employed in *Lewis* is inapplicable and, in any event, does not provide support for the State's statutory interpretation.

*The November 18, 2008 restitution order is vacated.*

¶ 16. **Skoglund, J.**, concurring. The Court correctly concludes that the Department of Corrections (DOC) is not entitled to recover the costs of extraditing defendant after he violated the terms of his probation and left the state. I write separately to express my position regarding the ability of a state agency to seek and receive restitution under statutes created to compensate victims of crimes as was decided in *State v. Lewis*, 167 Vt. 533, 711 A.2d 669 (1998). Looking at the restitution statutes and the compensation-to-victims-of-crime statute in pari materia, I do not believe the Legislature intended that state agencies be considered "victims" when performing their agency functions. I now believe that *Lewis* was wrongly decided.

¶ 17. In *Lewis*, we addressed whether a defendant had to compensate the DOC for the costs of extradition when the defendant escaped while on work-furlough or whether such expenses were properly a "cost of prosecution." Section 7172(b) of Title 13 states that the "[c]ost of prosecution shall not be taxed against a respondent in any criminal cause." We held that the DOC's expenses for the defendant's extradition were not "costs of prosecution," 167 Vt. at 537, 711 A.2d at 672; rather, for the purpose of awarding restitution, we found that the DOC was the "victim" of the defendant's escape under 13 V.S.A. § 7043 and,

therefore, entitled to compensation. *Id.* at 538-39, 711 A.2d at 673. The rationale underlying *Lewis* fails for four reasons.

¶ 18. As an initial matter, the logic of the *Lewis* opinion is disjointed. At the outset, the *Lewis* Court reasoned that extradition was not a "cost of prosecution" because transporting the defendant back to Vermont was "more closely related to his earlier conviction and sentence for assault, robbery, and kidnapping than to his subsequent prosecution for escape," and opined "that the Commissioner would have sought defendant's return, irrespective of any subsequent decision to prosecute." *Id.* at 535-36, 711 A.2d at 671. Nevertheless, in deciding that the DOC was a "victim," we expressly held that because the "underlying substantive offense in this case [was] escape, the Department was the immediate and intended victim." *Id.* at 538, 711 A.2d at 673. In other words, in deciding that § 7172(b) did not prohibit ordering the defendant to repay the DOC the costs of returning the defendant to Vermont, we held the extradition was not part of a prosecution, but rather a normal part of the business of the DOC. Then we held that defendant's escape had victimized the DOC and entitled it to restitution. Either the cost of extradition is a "cost of prosecution" of the underlying crime of escape or it is a cost incidental to the duties of the DOC. See 28 V.S.A. § 102(b)(10) (Commissioner charged with power to "utilize the resources of the department to apprehend any person escaping from a correctional facility"). In *Lewis*, it is both.

¶ 19. Second, putting this logical flaw to one side, *Lewis* made a more fundamental error by holding that a state agency could properly be considered a "victim" within the meaning of § 7043. The Court found that "governmental bodies are not precluded from recovering under the restitution scheme." *Lewis*, 167 Vt. at 538, 711 A.2d at 672. To support this proposition, we cited two fraud cases, neither of which offered any relevant legal analysis. See *State v. Benoit*, 131 Vt. 631, 635, 313 A.2d 387, 389 (1973) ("[F]or lack of any evidence to the contrary, . . . defendant must repay . . . the Department [of Social Welfare] under the order of restitution by the lower court."); *State v. Godfrey*, 131 Vt. 629, 631, 313 A.2d 390, 391 (1973) ("[Restitution] was discussed in [*Benoit*,] decided at this term of Court, and the same answer is reached in this case."). In *Benoit* and *Godfrey*, the defendants had fraudulently received state-aid payments and were ordered, as a term of their probation, to repay the amount of money wrongly obtained.

Rather than designating a state agency a compensable "victim" of a crime, the defendants were simply forced to divest themselves of their ill-gotten gains.

¶ 20. Third, the term "victim" is not defined in either the restitution statute, 13 V.S.A. § 7043, or the probation statute, 28 V.S.A. § 252(b)(6). Citing to *State v. Bonfanti*, 157 Vt. 625, 628, 603 A.2d 365, 367 (1991), we noted that our statutory scheme assumes the victim of a crime "suffers some sort of wrong for which restitution compensates." *Lewis*, 167 Vt. at 538, 711 A.2d at 672. We likened the situation in *Lewis* to the restitution allowed in *Bonfanti*, where we upheld a restitution award to companies insuring a building that the owner had set on fire, and held "the Department was the immediate and intended victim of defendant's [escape]." *Id.* at 538-39, 711 A.2d at 673. We then found support for this finding in the definition of "victim" provided in Title 13, chapter 167, which established the victim's compensation fund.[2] *Id.* at 539, 711 A.2d at 673. This analytical stretch views the DOC as the equivalent of a true crime victim who has sustained physical, emotional, or financial injury as the direct result of a crime. I cannot make that stretch.

¶ 21. Fourth, I find it difficult to understand how an agency's budgeted and statutorily mandated expenses can properly be considered a "material loss" and the result of a crime. See 13 V.S.A. § 7043(a)(1) (restitution considered in cases where victim "has suffered a material loss"). In *Lewis*, we held that the costs of extradition were to be borne by the defendant because his escape caused the expense and thus was a "material loss" that was not part of "ordinary operational costs of law enforcement." 167 Vt. at 539, 711 A.2d at 673. Yet, 28 V.S.A. § 102 charges the DOC Commissioner with a series of powers that includes the "assignment and transfer of persons committed to the custody of the commissioner to correctional facilities." § 102(b)(5). Most importantly, the Commissioner has the power to "utilize the *resources of the department* to apprehend any person escaping from a correctional facility." *Id.* § 102(b)(10) (emphasis added). Unlike unforeseen property damage or medical expenses, the capture and rendition of an escaped prisoner is part and parcel of the duties of the DOC, and those expenses are not a loss, material or otherwise.

---

[2] Section 5351(7)(A) defines "victim" as "[a] person who sustains injury or death as a direct result of the commission or attempted commission of a crime."

¶ 22. Finally, beyond the flawed analysis in *Lewis*, I fail to see how any state agency could properly fall within the ambit of our restitution scheme. We have recognized that § 7043 "is narrowly drawn" and precludes restitution in many instances where our sister jurisdictions permit it. *State v. Forant*, 168 Vt. 217, 222, 719 A.2d 399, 402 (1998); see *id.* at 224, 719 A.2d at 403-04 (pointing out Vermont's restitution statute involves more narrow definition of "victim" than "most similar" jurisdiction's statute). Moreover, as it was enacted in conjunction with 28 V.S.A. § 252 as part of the "Crime Victim's Bill of Rights," the two statutes "are parts of a statutory scheme dealing with restitution, and they should be construed together." *State v. Jarvis*, 146 Vt. 636, 638, 509 A.2d 1005, 1006 (1986); see 1983, No. 229 (Adj. Sess.). They are meant to support crime victims following an injury directly resulting from a criminal's unlawful acts. The context of § 7043, combined with its language and true underlying legislative purpose and the flaws of the *Lewis* opinion, all lead me to recognize that we erred in permitting a state agency to recover restitution.

¶ 23. I am authorized to state that Justice Burgess joins in ¶¶ 16-18 and 21 of this concurrence.